SUSAN M. CHEHARDY, Chief Judge.
12This suit involves a railroad grade crossing accident in which a pedestrian was killed. The plaintiff appeals a judgment that granted motions for summary judgment in favor of two defendants. We reverse and remand.
FACTS
On July 25, 2009, Cynthia Tuckson, who was deaf, was killed by a train while walking across the railroad tracks at Taylor Street in Kenner. Her son, Donald Davis, filed suit against Illinois Central Railroad Company (IC), the City of Kenner, and others.[1] The plaintiffs contentions are that the Taylor Street crossing was unreasonably dangerous and that the defendants should have installed an active warning *587 system in 2009.[2]
IC and Kenner filed motions for summary judgment.
The following facts were uncontested: At approximately 7:20 p.m. Ms. Tuckson, who was walking north on Taylor Street, attempted to cross the tracks without first looking to see whether there was rail traffic approaching. It was daylight. She was struck and killed by an oncoming train that was moving at ^approximately 26 miles per hour, sounding its horn, and ringing its bell. The traffic control devices in place for roadway traffic using the Taylor Street crossing were post-mounted cross buck signs. The train had its headlights on at high-beam and its auxiliary lamps were lit. The engineer began applying the emergency brakes when the front end of the train was approximately 130 feet from the western edge of Taylor Street, or more than three seconds before the fatal impact occurred, while Ms. Tuck-son was alongside the cross buck sign in the southeast quadrant of the crossing, 15 feet or more from the closest rail of the southernmost track. It took 25 to 26 seconds for the train to come to a complete stop, during which time the train traveled 600 feet. Ms. Tuckson lived in the vicinity of the railroad crossing and was familiar with the Taylor Street crossing, having traversed it many times prior to the accident. Ms. Tuckson was deaf, but she did not suffer from any vision handicap. If she had stopped at the cross buck sign and looked both ways for approaching rail traffic, she could have seen the oncoming train before she walked up on to the tracks in front of the train.
IC provided video footage of the accident itself. The train’s locomotive was equipped with a dash-mounted, forward-focused video camera that captured in real time the events leading to the accident. As the train approached Taylor Street, the video footage shows Ms. Tuckson was walking steadily toward the tracks, gazing straight ahead without looking to either side. The video has an audio track, so the viewer can hear the train’s horn sounding and its.bell ringing continuously, and the sound of the air brakes as they were applied. The video shows that the train arrived at the Taylor Street crossing just as Ms. Tuckson was stepping onto the first track. Due to the height of the locomotive cab in which the camera was placed, the video does not show Ms. Tuckson as the train struck her. The train locomotive came' to a full halt at the next street crossing beyond Taylor Street.
|4The plaintiffs expert in accident reconstruction, James R. Loumiet, found that the actions of the train crew in handling the train — horn, speed, braking — were reasonable and proper under the circumstances and that there was nothing the crew could have done under those circumstances to avoid the accident. However, Loumiet opined that the Taylor Street crossing was extra-hazardous and in need of an active warning system due to. sight distance restrictions, parallel roads, multiple railroad tracks, the raised hump where Taylor Street intersects with the tracks, high train volume, school buses and large trucks using the crossing, the collision record, and lack of active warning devices.
In opposition to the motions for summary judgment, the plaintiff presented an affidavit by Roger P. Perkins, Sr., dated August 26, 2011. In it Mr. Perkins made the following statements: He owns Perkins Restaurant & Sports Club located at 500 Taylor Street in Kenner; he has been president of Concerned Citizens Civic Co *588 alition for approximately 15 years; he has known Cynthia Tuckson for 20 years, and he knew she was deaf. On the date of Ms. Tuckson’s accident, there were two parties going on at the Rose Minor Park, which faces Taylor Street and is next to the railroad crossing at Taylor Street. In 2009, there were three local streets, including Taylor Street, Jackson Street- and Webster Street, that did not have active warning signs or crossing gates on them. “All these streets are in a predominately African American and low income community.” In the years prior to July 25, 2009, there have been people injured and killed at the Taylor Street, Jackson Street, and Webster Street [crossings]. On several occasions prior to July 25, 2009, he spoke with the Kenner city councilman who represented the district about the need to install crossing gates and blinking signals for the Taylor Street, Jackson Street, and Webster Street crossings. “Kenner Public Works, City of Kenner Department of Parks and Recreation, Kenner Code Enforcement, and |fithe Kenner Police Department travel these streets all the time and should have been aware that there were no active warnings of the crossing nor did they have crossing gates.” “A cduple of months ago, active barricades with flashing lights and crossing arms were installed on Taylor Street and Webster Street crossings.”
The plaintiff listed the following in his Statement of Contested Facts: (1) IC and Kenner knew of the accident history of the Taylor Street crossing; (2) IC and Kenner knew that two mainline tracks warranted active warning devices; (3) the area of Taylor Street between the railroad right-of-way was controlled by Kenner or the railroad; (4) sight-restricting vegetation was in the railroad’s right-of-way; (5) the Taylor Street crossing should have had active warning devices before Ms. Tuck-son’s July 25, 2009 accident; (6) there were multiple causes of the July 25, 2009 accident; (7) IC and Kenner knew that the Taylor Street crossing was unreasonably dangerous; (8) the conduct of IC and Ken-ner was a cause-in-fact of the resulting harm; and (9) Cynthia Tuckson looked to her left before she began her walk towards the Taylor Street crossing.
In reply to the opposition, IC objected to the Perkins affidavit, arguing various statements by Mr. Perkins are inadmissible because the plaintiff laid no predicate and the affiant established no personal knowledge for his assertions. The challenged statements include that there were two parties going on at Rose Minor Park on the day of Ms. Tuckson’s accident; that people have been injured or killed at the crossings at Taylor Street and two other streets; that he discussed the “need to install crossing gates and blinking signals” with the then-councilman for the district; that various Kenner department employees were on “these streets all the time.”
IC also objected in its reply memorandum to some statements by James Loum-iet. Specifically, IC challenged Loumiet’s statement that he observed and |fimeasured “sight-obstructing vegetation within IC’s right-of-way when he inspected the accident location on May 8, 2012.” IC pointed out that Loumiet does not describe the precise location of the vegetation in relation to Taylor Street, although he claims that the vegetation obstructed Cynthia Tuckson’s view of the oncoming train that ultimately struck her. IC notes that Loumiet was not present at the scene when the accident occurred, and his inspection was nearly three years later. His affidavit includes no predicate for the assumption that the condition of the vegetation on May 8, 2012 was identical to its condition on July 26, 2009. IC referred to photographs, attached as an exhibit to its memorandum, that were taken within a *589 few days of the accident and- also to the video recording from the train’s camera. IC also pointed to Loumiet’s admission that his analysis addressed the risks posed to operators of motor vehicles using the crossing, not the risks it posed to pedestrian users. Loumiet acknowledged there clearly is a difference.
IC further objected to Loumiet’s use of train and vehicle traffic count information from the Federal Railroad Administration crossing inventory database, as well as accident history data gathered and maintained by the Federal Railroad Administration, because federal law prohibits the use of such materials for any action for damages such as in this case. IC referred to 23 U.S.C. § 409 and Long v. State, DOTD, 2004-0485 (La.6/29/05), 916 So.2d 87.
The district court granted summary judgment in favor of both defendants, ruling that Ms. Tuckson was the sole cause of the accident.
In written reasons for judgment, the court discussed the evidence offered in support of and against summary judgment, noting, “plaintiffs mother [had] an unobstructed view of at least 800 feet” and “plaintiffs own expert, James Loumiet, confirmed that in this case, a pedestrian standing as cióse as five feet from the nearest rail of the track would not be in danger of being struck by a passing train.” |7The court stated further, “this crossing was not a dangerous trap, and plaintiff’s mother had ample opportunity from a position of perfect safety to see what she should have seen had she simply looked as she was legally obligated to do.” (Emphasis added.) The court found that a railroad company has no legal duty to install an additional traffic control device, under La. R.S. 32:169(E).
The court concluded,
The Court must note that it viewed the video which, disturbingly, shows plaintiffs mother stepping into the path of a moving train, which (despite the fact that she could not hear it) was constantly blowing its whistlei without taking even a moment to look both ways before she crossed the tracks. The video and photographs submitted by the defendants also make perfectly clear that plaintiffs mother’s view of the oncoming train was in no way obstructed, had she chosen to turn her head in its direction. Although the Court sympathizes with plaintiff, it is, sadly, clear that had his mother done what a reasonable person under the circumstances should have done, this tragedy would have been avoided.
ARGUMENTS
On appeal, the plaintiff makes two assignments of error:
(1) The trial court erred in finding Cynthia Tuckson the sole cause of the train-pedestrian accident. The plaintiff contends that in a railroad crossing accident, causation is a fact-specific inquiry requiring the factfinder to weigh the conduct and knowledge of-the pedestrian, the railroad company, and the municipality, thereby making a motion for summary judgment highly improbable..
(2) The trial court erred by not allowing a jury to determine if the Taylor Street crossing was unreasonably dangerous, necessitating an active warning system in 2009. The plaintiff argues that to determine if a railroad crossing is unreasonably dangerous, requiring an active warning system, the trier of fact must consider a host of factors, including sight obstructions, train volume, dual tracks, |8parallel roads, accident history, types of vehicles and citizens using the crossing, and location of the crossing.
*590 In opposition, IC contends it is not liable for this accident because the plaintiff cannot show that IC breached any duty owed by it to Ms. Tuckson (that is, to pedestrian users of the Taylor Street railroad grade crossing), or that any alleged breach of a duty owed was the legal cause of the claimed damages.
IC contends, first, it complied with all obligations owed to roadway users attempting to cross its tracks at the public highway grade crossing — specifically, the cross buck signs regulating traffic on Taylor Street, as required by La. R.S. 32:169(A); sounding the train’s horn for the prescribed times and distances set out in 49 C.F.R. § 222.21; and maintaining track speed within the limits set by 49 C.F.R. § 213.307 and 49 C.F.R. § 201.01 et seq.
Second, IC asserts that Taylor Street was not a “dangerous trap” to Ms. Tuck-son. A “dangerous trap” exists only where the view of the roadway user is so obstructed as to require the user to place himself in a position of peril dangerously near the fi’acks to have a view of any oncoming train. Here, had Ms. Tuckson looked both ways before she started across the track, she would have easily seen the train approaching.
Third, IC contends that the foundation of the plaintiffs case against IC is “entirely illusory,” because the plaintiff hypothesizes that if the Taylor Street crossing had been signalized before this accident, the accident would never have happened. IC asserts this is an incorrect application of duty/risk analysis, because it is an “if/ then” showing of accident avoidance. The duty, if any, owed is to be fashioned on a case-by-case basis, based on the facts of the case at hand. To prevail on this theory, the plaintiff must establish that on or before July 25, 2009, IC knew or should have known that the Taylor Street crossing was unreasonably |9dangerous to pedestrians using it in the exercise of due care for their own safety. IC argues the plaintiff has no evidence to support that theory.
In addition, IC points out that James Loumiet admitted his opinions regarding the signalizing of the crossing were premised on his analysis of the risks the crossing posed to motorists, not to pedestrians. Loumiet acknowledged there are clear differences between motorists and pedestrians in their ability to stop.
Fourth, IC asserts that determining what roadway regulatory signs beyond the cross buck signs are necessary is a governmental function not shouldered by the private sector. The plaintiffs reliance on La. R.S. 32:169(E) is misplaced, because that statute permissively allows a railroad to install additional warning devices, but does not require it.
Fifth, IC contends the plaintiff imper-missibly relies on inadmissible and objectionable evidence. The plaintiff relied on and cited information gathered from the National Highway-Rail Crossing Inventory and the Federal Railroad Administration Accident History Database. Use of such information in a lawsuit for damages is prohibited by 23 U.S.C. § 409. Further, the plaintiff relies on statements in Roger Perkins’ affidavit, which are not shown to be based on personal knowledge and, further, bring in two other street-railway crossings not relevant to this case. In addition, there were no specific facts given, nor was there anything to show the accidents occurred under the same or substantially the same circumstances.
Finally, IC argues the trial court did not err in stating the cause of the accident was Ms. Tuckson’s inattentiveness, because Louisiana law does not impose a duty to *591 warn of dangers that are “open and obvious.”
The City of Kenner asserts that to determine whether Kenner owed any duty to erect more than the railroad’s mandatory cross buck signs, it must be determined 110if there is sufficient proof to find the crossing at Taylor Street was a dangerous trap under Louisiana law. Kenner argues there is not sufficient proof that the crossing was a dangerous trap, because “Ms. Tuckson would have had an unobstructed view to see at least 867 feet west from the Taylor Street crossing.”
Kenner asserts further that the affidavit of Roger Perkins and the testimony of James Loumiet were flawed. Kenner contends there are no predicates or foundations for Perkins’ assertions, the affidavit presents irrelevant statements, and it relies on inadmissible evidence. Kenner asserts that Loumiet’s analysis and resulting opinions are based on potential risks to motorists, not to pedestrians. Kenner points out that under the duty-risk analysis, the duty that must be determined is the duty to the particular plaintiff in the case; hence, Kenner argues, Loumiet’s analysis, opinions and testimony are irrelevant to this case. In addition, Loumiet impermissibly relied on the Federal Railroad Administration crossing inventory database. Kenner contends “the trial judge correctly determined that the sole duty breached that day was the duty of Ms. Tuckson for not doing what the law required of her — ‘for not doing what a reasonable person under the circumstances should have done.’ ”
LAW AND ANALYSIS
A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-883.
The determination of whether a condition is dangerous and hazardous, and causation, are both fact-specific inquiries. Duperclay v. Illinois Cent. R.R. Co., 04-452, p. 5 (La.App. 5 Cir. 12/28/04), 892 So.2d 124, 127.
|nA motion for summary judgment is rarely appropriate for disposition of a case requiring judicial determination of subjective facts such as intent, motive, malice, good faith, or knowledge or of issues that require a determination of the reasonableness of acts and conduct of parties under all the facts and circumstances of a case. Greater Lafourche Port Commission v. James Construction Group, L.L.C., 11-1548, p. 7 (La.App. 1 Cir. 9/21/12), 104 So.3d 84, 88-89.
We find the trial court made a number of fact determinations that were impermissible on motion for summary judgment: The trial court found that “this crossing was not a dangerous trap, and plaintiffs mother had ample opportunity from a position of perfect safety to see what she should have seen.” To find a “dangerous trap” requires a fact determination that the view of the roadway is so obstructed as to require the user to place himself in a position of peril dangerously near the tracks to have a view of any oncoming train.
To determine whether the crossing was unreasonably dangerous, the trial court had to consider factors such as sight obstructions, train volume, dual tracks, parallel roads, accident history, types of vehicles and persons using the crossing, and location of the crossing. These are matters that should be decided by the trier of *592 fact. Further, the trial court impermissi-bly weighed some issues of fact presented by the Perkins affidavit to arrive at the court’s conclusion.
Accordingly, we find the trial court erred in granting summary judgment.
DECREE
For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings. Assessment of costs of this appeal is to wait until the final disposition of the lawsuit.

REVERSED AND REMANDED.

. The petition originally named Canadian National Railway as owner of the train, but was amended to substitute Illinois Central Railroad Company instead. The suit also named as defendants the engineer and the conductor of the train, and the State of Louisiana through the Department of Transportation and Development (DOTD). DOTD was later dismissed from the suit.

. An active warning system includes devices such as blinking lights and crossing arms that lower across the crossing as a train approaches.